SIXTH DIVISION
December 18, 2009

1-08-2739

ILLINOIS BONE & JOINT INSTITUTE,                )    Appeal from
                                                )    the Circuit Court
          Plaintiff-Appellee,                   )    of Cook County
                                                )
          v.                                    )    05 M1 136203
                                                )
THOMAS KIME,                                    )    Honorable
                                                )    Lawrence O'Gara,
          Defendant-Appellant.                  )    Judge Presiding

          JUSTICE McBRIDE delivered the opinion of the court:

          The defendant brings an interlocutory appeal purportedly as a matter of right under

Supreme Court Rule 304(b)(3), which authorizes this court to review an order granting the relief

requested in a petition under §2-1401 of the Code of Civil Procedure.  210 Ill. 2d R. 304(b)(3);

735 ILCS 5/2-1401 (West 2004) (Code).  However, the order the defendant challenges granted

what the plaintiff styled as a motion to reinstate its case under §2-1301(e) of the Code, the circuit

court rejected the defendant's contention that the plaintiff was required to come within the terms

of §2-1401 rather than 2-1031(e), and we agree with the court's determination.  735 ILCS 5/2-

1301(e), 2-1401 (West 2004).  There is no rule of appellate practice which allows a party to

appeal as a matter of right on an interlocutory basis from an order granting a §2-1301(e) motion.

Accordingly, we dismiss the appeal.

          Shortly after the defendant filed this appeal, the plaintiff motioned to dismiss for lack of

jurisdiction.  We did not have the benefit of the record on appeal or a clear statement of the

necessary facts and denied the motion.  The plaintiff did not include this argument in its

1-08-2739

subsequent appellate brief, nonetheless, we have a duty to consider our jurisdiction. *In re Tiona W.*, 341 Ill. App. 3d 615, 619 (2003) (*sua sponte* dismissing appeal for lack of jurisdiction where order at issue was interlocutory). See also *Mar Cement, Inc. v. Diorio Builders, Inc.*, 153 Ill. App. 3d 798, 800 (1987) (indicating appellate court must determine its jurisdiction prior to deciding the merits of an appeal); *Hawes v. Luhr Brothers, Inc.*, 212 Ill. 2d 93, 106 (2004) (indicating appellate court erred by addressing merits of appeal where jurisdiction was lacking). We convened the parties for oral arguments that were limited to this question.

Chicago attorney Steven J. Sparacio initiated this action by filing a complaint on May 27, 2005, on behalf of Illinois Bone & Joint Institute (IBJI) against Thomas Kime, alleging Kime breached a contract requiring payment of $38,159 for medical services rendered between September 21, 2001, and July 24, 2002. The pleading designated IBJI's attorney of record as "The Law Offices of Steven J. Sparacio," which suggests Sparacio was a sole practitioner. Defendant Kime appeared *pro se*, but then hired a lawyer who drafted and spindled a motion for presentation on October 4, 2005, to obtain leave to file a substitute appearance. Sparacio did not appear in court on October 4, 2005, when the judge granted the motion for leave to file a substitute appearance and entered an order drafted by Kime's new attorney which continued the case to the court's status call on November 9, 2005. Sparacio died on October 9, 2005. Kime's attorney was the source of an additional status date: on October 24, 2005, the attorney filed a §2-615 motion to strike IBJI's complaint, scheduled the motion for presentation on November 14, 2005, and sent notice to Sparacio's business address. 735 ILCS 5/2-615 (West 2004). It is undisputed that Kime's attorney was unaware of Sparacio's death. Next, although Kime's

2

attorney had drafted the court order setting the case on the status call for November 9, 2005, the attorney did not appear in court that day; no one appeared in Sparacio's stead; and the judge *sua sponte* dismissed IBJI's case for want of prosecution (DWP).  Although there is a preference for resolving cases on the merits (*Smith v. City of Chicago*, 299 Ill. App. 3d 1048, 1054 (1998), citing 735 ILCS 5/1-106 (West 1996)), a trial court may dismiss a civil action due to the plaintiff's failure to prosecute with due diligence, in order to manage the court's docket and avoid unnecessary burdens on the court and opposing parties.  24 Am. Jur. 2d §61-62, at 52-53.  Despite the DWP, on November 14, 2005, the matter was called as to the status of Kime's §2-615 motion and an additional order was entered.  735 ILCS 5/2-615 (West 2004).  The November 14th order indicates the plaintiff's counsel had not appeared as scheduled regarding the 2-615 motion and that the matter was being continued to November 29, 2005, "without further notice."  On November 29, 2005, the same judge entered an order stating:  "This matter coming on status on Defendant's motion to dismiss; counsel for defendant having appeared and counsel for plaintiff failing to appear; motion is granted.  Case dismissed pursuant to 735 ILCS 5/2-615."  The parties agree that when the judge entered the continuance order on November 14th and the dismissal order on November 29th, he was unaware that he had also entered the DWP on November 9th.

Approximately 28 months later, on March 24, 2008, IBJI, through new counsel, filed a motion to vacate the DWP order and the §2-615 order, noting that both orders were entered after Sparacio's death and that notice of the second status date had been mailed after his passing.  IBJI argued the DWP order remained interlocutory until the expiration of the statute of limitations on

1-08-2739

the underlying contract claim, which was 10 years. See 735 ILCS 5/13-206 (West 2004) (actions on written contracts must be commenced within 10 years). Pursuant to §13-217 of the Code, a DWP ordinarily remains an interlocutory order until the passage of one year or the expiration of the statute of limitations on the underlying action, whichever is greater. 735 ILCS 5/13-217 (West 1994) (when an action is DWP'd, the plaintiff may commence a new action within one year or within the remaining period of limitation, whichever is greater); *S.C. Vaughan Oil Co. v. Caldwell, Troutt & Alexander*, 181 Ill. 2d 489, 502 (1998) (DWP becomes final only when the §13-217 period for refiling expires); *Progressive Universal Insurance Co. v. Hallman*, 331 Ill. App. 3d 64, 67 (2002) (DWP is interlocutory as long as the option to refile is still available to the plaintiff); *Brite Lights, Inc. v. Gooch*, 305 Ill. App. 3d 322, 325 (1999) (DWP becomes final when the 13-217 refiling period expires because at this point the order effectively ascertains and fixes absolutely and finally the rights of the parties in the lawsuit). IBJI also addressed the 2-615 order, contending it remained interlocutory because it did not dismiss the case with prejudice. 735 ILCS 5/2-615 (West 2004). IBJI based its motion to vacate on §2-1301(e) of the Code, which provides: "The court may in its discretion, before final order or judgment, set aside any default, and may on motion filed within 30 days after entry thereof set aside any final order or judgment upon any terms and conditions that shall be reasonable." 735 ILCS 5/2-1301(e) (West 2004). However, Kime responded that the second dismissal order was a final, appealable order, which forced IBJI to meet the more difficult requirements of a §2-1401 petition for relief from final judgment, including to seek relief within two years, and to plead and prove the existence of a meritorious claim as well as due diligence in both the underlying action and the filing of the

4

petition for relief. 735 ILCS 5/2-1401 (West 2004). IBJI disagreed and did not attempt to come within the terms of §2-1401, and, in any event, had already missed the statute's two-year window. 735 ILCS 5/2-1401 (West 2004). On June 9, 2008, after full briefing and oral argument, the judge rejected Kime's 2-1401 argument and granted IBJI's motion in accordance with §2-1301(e), specifying that "the history of this case provides the court with extraordinary circumstances, including the death of plaintiff's former counsel." 735 ILCS 5/2-1301(e), 2-1401 (West 2004). This was a different judge than the one who entered the two dismissal orders. The judge also rejected Kime's subsequent motion for reconsideration.

Regarding our jurisdiction, Kime acknowledges that the *sua sponte* DWP order was interlocutory due to §13-217's express terms, however, he contends the 2-615 dismissal order entered 20 days later was a final, appealable order because it granted a motion attacking the sufficiency of IBJI's allegations and it did not expressly give IBJI leave to replead or state that the dismissal was "without prejudice." 735 ILCS 5/2-615, 13-217 (West 1994). He contends these are indications the 2-615 dismissal was a final adjudication of the merits of IBJI's claim. Building on this conclusion, he also contends the interlocutory DWP merged into the 2-615 "final judgment order," and in effect was nullified and does not need to be addressed on appeal. 735 ILCS 5/2-615 (West 2004). See generally *DuPage Forklift Service, Inc. v. Material Handling Services, Inc.*, 195 Ill. 2d 71, 86 (2001) (interlocutory orders typically merge with a subsequent judgment order for purposes of an appeal). Logically, then, until the "final judgment order" was vacated in accordance with §2-1401, the judge could not properly consider any prior order. 735 ILCS 4/2-1401 (West 2004). He concludes that since IBJI did not come within the

terms of §2-1401, the judge erred by granting IBJI's motion to vacate the dismissal orders and reinstate the complaint. 735 ILCS 5/2-1401 (West 2004). IBJI responds that both dismissal orders were interlocutory when the judge properly exercised his discretion to vacate non-final orders under §2-1301(e) based on legal and equitable considerations. 735 ILCS 5/2-1301(e) (West 2004). In short, the question of our jurisdiction depends on whether the successive dismissal order is controlling.

In our opinion, the dispositive order was the dismissal for want of prosecution entered on November 9, 2005. After this DWP was entered, further proceedings were unauthorized until the order was vacated and the cause was reinstated to the court's docket. We reach this conclusion based on authority such as *Davis v. Robinson*, 374 Ill. 553 (1940). In that case, the plaintiff non-suited its case and filed a different action, but the defendants immediately filed a motion to vacate the dismissal of the first case and contended the pending motion reactivated the first case. *Davis*, 374 Ill. at 556. The supreme court determined that merely filing a motion to vacate was not enough to restore the first case. *Davis*, 374 Ill. at 556. The supreme court held that "[b]y the dismissal of the former suit the parties were out of court and all further proceedings were unauthorized until the judgment of dismissal was vacated and the cause [was] reinstated [by court order]." *Davis*, 374 Ill. at 556. Similarly, the plaintiff in *Bettenhausen* voluntarily non-suited its action, but then motioned for leave to amend its complaint without first "ask[ing] to have the order of dismissal set aside." *Bettenhausen v. Guenther*, 388 Ill. 487, 489 (1945). When the judge refused to give leave to amend the complaint, the plaintiff appealed. *Bettenhausen*, 388 Ill. at 489. On appeal, the supreme court reiterated its holding in *Davis* that

6

once a suit is dismissed, further proceedings are unauthorized until the judgment of dismissal is vacated and the cause reinstated. *Bettenhausen*, 388 Ill. at 489-90, citing *Davis*, 374 Ill. 553. Accordingly, the supreme court directed the circuit court to "vacate all orders entered in said cause subsequent to the order of dismissal." *Bettenhausen*, 388 Ill. at 491. Although *Davis* and *Bettenhausen* concern voluntary dismissals rather than the involuntary DWP entered in IBJI's action, they illustrate that a party may not continue to litigate a pleading after its dismissal. Like the appellants in *Bettenhausen* and *Davis*, Kime continued to appear in this matter after the complaint was dismissed. His attempts to continue litigating a closed case were not effective because until the court vacated the dismissal and reinstated the pleading, further proceedings regarding the merits of the pleading were unauthorized. *Davis*, 374 Ill. at 556; *Bettenhausen*, 388 Ill. at 489-90. Because there was no pleading at issue at the time, entry of the 2-615 dismissal order had no effect on IBJI's right to subsequently request reinstatement of its case within the time allowed by §13-217. 735 ILCS 5/13-217 (West 1994).

We have also considered whether IBJI's case could have been reinstated by Kime's conduct on November 29, 2005, due to the doctrine of revestment. Revestment is an equitable principle discussed in authority cited in IBJI's response brief and taken up by Kime in his reply brief and at oral arguments. See *Governale v. Northwest Community Hospital*, 147 Ill. App. 3d 590, 596 (1986); *Gentile v. Hansen*, 131 Ill. App. 3d 250, 254 (1984). Revestment refers to the trial court reacquiring subject matter jurisdiction over a cause, after the court has lost jurisdiction due to its entry of a final judgment order and the passage of 30 days. *Gentile*, 131 Ill. App. 3d at 254; 735 ILCS 2-1401 (West 2004). As suggested above, generally, the plaintiff's only avenue

of relief in the trial court is to petition for relief from judgment under §2-1401. *Gentile*, 131 Ill. App. 3d at 254; 735 ILCS 2-1401 (West 2004). The exception of revestment occurs when the parties actively participate in further proceedings that are inconsistent with the order of dismissal. *Wilkins v. Dellenback*, 147 Ill. App. 3d 549, 555 (1986). The conduct of the parties negates the order of dismissal and revests the trial court with personal and subject matter jurisdiction. *Wilkins*, 147 Ill. App. 3d at 555. In other words, revestment is the equitable counterpart to a §2-1401 proceeding. See *In Re Marriage of Savas*, 139 Ill. App. 3d 68, 73 (1985) (referring to the rule of revestment or reinstatement as "a useful and equitable safety net"). "The rule allows parties, by tacit consent, to regard as undone that which ought not to have been done, without fear that an opponent may later resurrect the dead order." *Gentile*, 131 Ill. App. 3d at 256, quoting *Faust v. Michael Reese Hospital & Medical Center*, 79 Ill. App. 3d 69, 73 (1979). Revestment may be applied to actions which are dismissed for want of prosecution. *Gentile*, 131 Ill. App. 3d at 255.

However, it cannot be applied to this particular DWP for numerous reasons. The first reason is that only 20 days lapsed between the two dismissal orders, thus, the court had not lost jurisdiction due to the passage of 30 days after entry of a final order, and never needed to be "revested" with jurisdiction. Second, revestment only occurs when both parties actively participate in proceedings that are inconsistent with a dismissal order, and IBJI did not take part in any such proceedings. More specifically, IBJI's first attorney, Sparacio, filed the complaint in May 2005, was notified the Sheriff's deputy could not serve the defendant in June or July 2005, went back to the courthouse in July 2005, with an *ex parte* motion for appointment of a special

process server, and died later that summer. IBJI's next involvement in the case was through its second attorney, who filed a motion to vacate the two dismissal orders entered when Sparacio failed to appear for status dates in November 2005. IBJI did not participate in proceedings that were inconsistent with the DWP. Kime cites *Governale*, 147 Ill. App. 3d at 596, for the proposition that his conduct alone could result in revestment. To the extent that *Governale* suggests one litigant can revest a trial court with jurisdiction, it is misleading. *Governale*, 147 Ill. App. 3d at 596. Revestment cases, even *Governale*, require the active participation of both litigants but give particular emphasis to conduct of the party who would have benefitted from the dismissal order. See e.g., *Governale* 147 Ill. App. 3d 596-97 (where parties agreed to permit a personal injury action to be dismissed while plaintiff was undergoing additional medical care, plaintiff refiled the complaint, and the three defendants answered it, revestment had occurred and the defendants could not rely on the dismissal), citing *Gentile*, 131 Ill. App. 3d at 254-56 ("neither party considered the May 1980 dismissal order as a final and binding judgment", "[b]oth plaintiff and defendant appeared before the court on numerous subsequent occasions," and "both adopted positions inconsistent with the merits of the order since both treated the action as a continuing, viable legal proceeding"); *Wilkins*, 149 Ill. App. 3d at 554-55 (analyzing conduct of both parties, with emphasis on defendant's because "litigants may revest a court which has general jurisdiction over a matter with both personal and subject matter jurisdiction after the entry of a final order," but "the conduct relied upon must be by the party benefitting from the dismissal order"); *Stevens v. City of Chicago*, 119 Ill. App. 2d 366, 372 (1970) ("The elements essential to revesting of jurisdiction are (1) the active participation of the parties without

objection, (2) in further proceedings inconsistent with the prior order of dismissal."); *Yugoslav-American Cultural Center, Inc. v. Parkway Bank & Trust Co., Inc.*, 327 Ill. App. 3d 143, 149 ("The record post-DWP is repelete with examples of both parties active participation in the litigation."). A third reason for rejecting revestment is that it is an equitable principle, and we fail to see the fairness in allowing Kime to benefit from the untimely death of the plaintiff's first attorney. Fourth, Kime was unaware of the DWP when he presented the §2-615 motion, and, therefore did not knowingly choose to ignore the DWP and continue litigating. *Wilkins*, 149 Ill. App. 3d at 555 (rejecting revestment because "[u]pon being advised by the trial court that the cause had been dismissed, *** defendant did not ignore the order or actively participate in proceedings inconsistent with the merits of the final judgment but allowed her motion [to vacate defaults and answer the complaint] to be stricken from the *** call demonstrating that defendant considered the dismissal order to be binding and final"); *Raichand v. National Republic Bank of Chicago*, 265 Ill. App. 3d 531, 533 (1994) ("The record shows that the defendants did not actively participate in the case once they learned it was dismissed"); *Wilson v. Evanston Hospital*, 257 Ill. App. 3d 837, 841 (1994) ("in cases employing the revestment rule, it appears that the parties came before the court seeking judicial intervention, knowing of the court's previously entered order).[1] For any one of these four reasons, even if Kime's presentation of the 2-615 motion in late November was inconsistent with the DWP entered in mid November, there

---

[1] *Cf. A.A. Store Fixtures Co., Inc. v. Shopiro*, 272 Ill. App. 3d 959, 966 (1995) ("Defendant's argument that revestment cannot occur unless the other party knowingly waives his rights appears nowhere in the case law.")

1-08-2739

was no revestment.

Thus, we conclude the *sua sponte* DWP order was still in effect when Kime presented his 2-615 dismissal motion later that same month and that the DWP prevented him from addressing the merits of the complaint.

Furthermore, his characterizations of the 2-615 dismissal order are incorrect. He cites *O'Fallon Development Co. v. City of O'Fallon*, 43 Ill. App. 3d 348, 351-52 (1976), for the proposition that the second dismissal order was final and appealable because it granted a §2-615 motion attacking the sufficiency of the plaintiff's allegations. By definition, however, all §2-615 motions attack the sufficiency of the plaintiff's allegations (735 ILCS 5/2-615 (West 2004), thus, the motion itself is not the proper focus of inquiry. What *O'Fallon* tells us is to "look to the substance of what was actually decided by the dismissal order, rather than the form of the order, and if the effect is to decide that the basic allegations of the pleader, however stated, are insufficient as a matter of law to state a cause of action, then an order dismissing the pleading is a final, appealable order terminating the litigation between the parties." *O'Fallon*, 43 Ill. App. 3d 352. The contents of the dismissal order entered on November 29, 2005, indicate the court did not consider whether IBJI's basic allegations stated a cause of action. The order specifies that the matter was called for status only ("This matter coming on status on defendant's motion to dismiss"). Missing from the order or from the record on appeal are any indications that the court anticipated or received oral arguments regarding the substance of the 2-615 motion, that the court accepted written arguments in lieu of a hearing, or that the court ever contemplated the sufficiency of IBJI's pleading. The order expresses no opinion about the persuasiveness of

11

Kime's motion or the adequacy of IBJI's complaint. Instead, the court specifically attributed the dismissal to "counsel for defendant having appeared and counsel for plaintiff failing to appear." The court did not grant the §2-615 motion because it determined IBJI's pleading was deficient, but because IBJI's (deceased) lawyer missed two status dates in a row (November 14, and November 29, 2005). The dismissal was based on a perceived procedural misstep, rather than a pleading defect. Kime correctly states that the substance of the order is controlling, but there is nothing in this order which can be construed as an adjudication of the dispute. We also point out that because the dismissal was prompted by a perceived procedural error which could not be cured by amending the pleading, the court had no reason to indicate the dismissal was "with leave" to replead or was "without prejudice" to refiling. Also, Kime's reliance on Supreme Court Rule 273 is misplaced. The rule states: "Unless the order of dismissal *** *otherwise specifies*, an involuntary dismissal of an action, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join an indispensible party, operates as an adjudication on the merits." (Emphasis added.) 134 Ill. 2d R. 273. The court in this instance "otherwise specifie[d]" that the dismissal on November 29, 2005, was due to the absence of the plaintiff's counsel rather than due to the court's adjudication on the merits. We would have to disregard the plain terms of this order, the Supreme Court rule, and binding authority in order to find that the successive dismissal order was a final judgment order.

For these reasons, we find that the §2-615 dismissal order entered on November 29, 2005, was an interlocutory order entered after the case had been DWP'd on November 9, 2005, and that the DWP remained interlocutory on June 9, 2008, when the court vacated both dismissal orders

12

and reinstated IBJI's cause of action. The order entered on June 9, 2008, did not grant relief from a final judgment order pursuant to §2-1401of the Code, and Kime's reliance on that statute and Supreme Court Rule 304(b)(3) as the basis for our jurisdiction is incorrect. 735 ILCS 5/2-1401 (West 2004); 210 Ill. 2d R. 304(b)(3). See also *Progressive Universal*, 331 Ill. App. 3d at 68 (where seven months lapsed between DWP and motion to vacate DWP, §2-1301(e) was proper vehicle to vacate the non-final order, not §2-1401). Accordingly, without reaching his arguments about the merits of IBJI's motion to vacate the dismissal orders and reinstate the complaint, we dismiss Kime's appeal for lack of jurisdiction.

Appeal dismissed.

J. GORDON and R.E. GORDON, JJ., concur.